## Calumet Electric St. Ry. Co. v. Claudius Peters, Adm'r.

1. SERVANTS—*Incompetency of, Question of Fact*—The question as to whether a servant is incompetent or careless, or whether his master knew of such incompetency or carelessness, and whether by the exercise of reasonable diligence he might have known of such incompetency or carelessness, are questions of fact for the determination of the jury, under proper instructions by the court.

2. FELLOW-SERVANTS—*Proof of Incompetency and Knowledge of the Master.*—It is sufficient for a servant injured by the incompetency of a fellow-servant, to prove that such fellow-servant's incompetency was actually known to the master, or that the servant had a general reputation for incompetency to such an extent that, if the master had maintained a habit of vigilant supervision and inquiry, he would have learned the fact.

**Action in Case**, for personal injuries. Error to the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed March 12, 1900.

**Statement by the Court.**—Henry Madison, a conductor in the employ of plaintiff in error, was on February 25, 1897, injured by a collision between plaintiff in error's electric car, on which Madison was conductor and George O'Malley, motorman, and a railway passenger train of the Chicago & Eastern Illinois R. R. Co., and soon thereafter died from his injuries. His administrator brought suit, and a trial before the court and a jury resulted in a verdict of $5,000, and a judgment thereon against plaintiff in error, which it is sought to reverse by this writ of error.

The declaration charges that plaintiff in error kept the motorman, O'Malley, in its employ after it knew, or by the exercise of reasonable diligence might have known, that he was incompetent, unskilled and habitually careless, and that the collision which caused the death of plaintiff's intestate was the result of the incompetency, unskillfulness and carelessness of said motorman. The plea was the general issue.

The evidence establishes that the death of plaintiff's intestate was caused by the fault of the motorman in carelessly and negligently running his car onto the railroad crossing, crashing through the closed crossing gates immediately in front of the rapidly moving passenger train.

The evidence on behalf of defendant in error, in so far as it related to the charge of incompetency and carelessness of the motorman and the knowledge and means of knowledge thereof by the railway company, is in substance as follows:

Lambert, a conductor of the company from 1895 to 1896, testified that he worked at the same barn with O'Malley from the time witness went to work up to the time of the accident, which was about two years, and that he was on the same run with O'Malley about three months; that he knew his reputation for competence and carefulness as a motorman prior to his death (which occurred at the same time of

the accident which caused the death of plaintiff's intestate); that his reputation was that of a careless man and a drinking man for about one year before his death; that his, the motorman's, usual and customary way was to go over a railroad crossing at full speed, when the conductor flagged him to go across; that full speed of an electric car is fifteen to eighteen, maybe twenty-two miles an hour; that witness never heard any one else than a Mr. Tuttle say that O'Malley was a drinking man; that during the time witness ran with him, O'Malley went into a saloon three or four times a day, but witness did not report it; that witness several times heard passengers on his car say that O'Malley was a careless man, but witness never reported it to his superior officers, because he never reported any man; that Mr. Tuttle told him that he, Tuttle, would not run with O'Malley because he was too careless.

Sexton, the gate tender at the railroad crossing at the time of the accident, said he knew O'Malley three or four months before the accident, and knew his reputation for competency and carefulness as a motorman among the people with whom he worked; that he heard quite a number, two or three at least, say that O'Malley had to be watched; that his reputation was not very good; that witness had seen him cross the tracks at the crossing in question without stopping and without giving the conductor a chance to get off the car; that one occasion when he did this was about two hours before the accident, when deceased was acting as his conductor and inside the car near the center of the car and walking back toward the rear end.

H. L. Long, called as a witness for the plaintiff, testified that he knew O'Malley and acted as a conductor on the same run with him while employed by the company, which employment commenced three or four years before the accident, and that his reputation for competency and carefulness as a motorman was good, so far as witness knew personally.

Edward Dahl, who was a conductor and also a motorman for the company, testified that he knew O'Malley for four

years during his employment with the company, but that he could not tell much about his reputation for competency and carefulness as a motorman; that previous to the accident, O'Malley crossed the crossing twice with witness without giving him a chance to flag; that witness heard Mr. Tuttle say that he did not like to run with O'Malley; that witness never reported that O'Malley ran the crossing twice without giving witness a chance to flag. ·

H. V. Rusling, who was master mechanic for the company and motorman instructor in 1893 and 1894, testified that O'Malley's competency as a motorman was fair. This was more than two years before the accident. He also testified that he told the superintendent of the company that O'Malley·was very careless in running over switches and curves, but that he never told the superintendent at any time of O'Malley's manner of going across railroad crossings.

The testimony on behalf of plaintiff in error is in substance as follows:

Both the foremen of transportation of the company during the time of O'Malley's employment as a motorman by it, testified that he was never reported to them by passengers, employes or other persons for incompetency or drunkenness.

Haller, a conductor of the company for three years, testified that he saw O'Malley cross the tracks at the crossing in question between eleven and twelve o'clock on the day of the accident, without flagging; that he did not stop before he went on the track; that deceased did not get off the car and flag it over; that deceased "started to the front door and then the motorman went over and he started back again; that is all there is to it;" and that the accident was about one o'clock.

Robert P. Hines testified that he was employed by the company from February 29, 1895, to October 7, 1898, but he does not state in what capacity; that he knew O'Malley and was acquainted with his general reputation for competency as a motorman, and that it was very good to his

knowledge, but on cross-examination he said that he never spoke to anybody about his reputation and nobody ever spoke to him about it, and that he " never heard anybody say anything about his being good or bad at all."

At the close of plaintiff's case, and also at the close of all the evidence, counsel for plaintiff in error moved the court to instruct the jury to find the defendant not guilty, which motions were overruled.

Kenesaw M. Landis, attorney for plaintiff in error.

I. B. Lipson, attorney for defendant in error; Hof-heimer & Pflaum, of counsel.

Mr. Justice Windes delivered the opinion of the court.

It is contended by plaintiff in error that the court erred in not taking the case from the jury at the close of all the evidence, and that the verdict is against the law and the evidence.   Under these contentions it is argued that defendant in error, plaintiff below, failed to prove that O'Malley was habitually careless and incompetent, or that the company had knowledge thereof; or by the exercise of reasonable diligence might have known it, and also that deceased was in a position to know whether O'Malley was a careless or careful man, and that he therefore assumed all risk by reason of O'Malley's carelessness or incompetence.

There was no evidence on behalf of plaintiff in error as to the general reputation of O'Malley for carefulness or competency by the foremen of transportation, the men of all others who should have known of it had it been good, because they had charge of the motormen and conductors and were their immediate superiors.   These two witnesses only testified that no report was ever made to them as to his incompetency or drunkenness.   They were not asked whether any report was made to them as to his carelessness.

On behalf of plaintiff two witnesses testified as to O'Malley's reputation; one that he was reckless, careless and a drinking man; that O'Malley's usual and customary way

was to go over a railroad crossing at full speed; and another, that O'Malley's reputation for competency and carefulness as a motorman was not very good, and that he had seen O'Malley on two occasions cross the railroad tracks with his car without stopping. These witnesses were in a position to know as to O'Malley's reputation for competency and carefulness. One of them ran with him as a conductor, and the other was the gate tender at the crossing where the accident happened.

There were also two other witnesses who testified to careless and reckless acts on the part of O'Malley as a motorman, which are set out in the statement preceding this opinion.

Whether O'Malley was an incompetent or careless servant, and whether plaintiff in error knew of such incompetency or carelessness, and whether by the exercise of reasonable diligence it might have known of such incompetency or carelessness, were questions of fact for the determination of the jury, under proper instructions by the court. There is no such absence of evidence on either of these points as would have justified the court in taking the case from the jury. The conclusions which might naturally be reached upon these matters, under the evidence in this record, by reasonable and fair-minded persons, might well differ. No complaint is made as to the instructions given by the court, and after a full consideration of the evidence on these matters, we can not say that the verdict of the jury is manifestly against the evidence.

The proof of general reputation of O'Malley, together with the proof of the specific acts of carelessness, which latter proof is competent in connection with proof of his general reputation in that regard (Western Stone Co. v. Whalen, 151 Ill. 482), was entirely sufficient to justify the submission of the case to the jury, and sufficient, in our opinion, to sustain its verdict, when it is considered in connection with the evidence that the company was notified by its instructor of motormen that O'Malley was very careless in running over switches and curves, and that the foremen of transportation of the company were not asked as to

his general reputation for carefulness, and were not asked whether they had any reports as to O'Malley in that regard.

In the Whalen case, *supra*, the Supreme Court, in speaking on this subject (p. 483), quote from Shearman & Redfield on Negligence, as follows:

"It is clearly sufficient for a servant injured by the incompetency of a fellow-servant, to prove that such fellow-servant's incompetency was actually known to the master, * * * or that the servant had a general reputation for incompetency to such an extent that, if the master had maintained a habit of vigilant supervision and inquiry, he would probably have learned the fact."

The contention that deceased knew that O'Malley was incompetent and careless, and therefore assumed any risk in that regard, was also a question for the jury, and we think that the evidence justifies their verdict. The only evidence that deceased knew of the carelessness or incompetency of O'Malley, is that, between one and two hours before the accident which resulted in the death of deceased, O'Malley ran his car over the railroad crossing without stopping to allow the conductor (deceased) to flag it over, and it appears that then the deceased started toward the front of the car, and when O'Malley ran the car onto the crossing he started back again, thus plainly indicating by his actions that deceased expected that O'Malley would stop the car to give an opportunity to deceased to flag it over the crossing, if it was safe to cross. There is no evidence that deceased ever ran on a car with O'Malley before the day of his injury, or that he knew of any specific acts of carelessness on O'Malley's part beyond this one, or that he knew of his reputation for carelessness. Neither does it appear that deceased had any opportunity of seeing any of the officials of the company to whom he could make report of this one instance before the time of the accident. It could not be reasonably expected or required that deceased should stop his car in the midst of a run and refuse on the instant to proceed further with his duties at the peril of assuming the risk of injury by reason of O'Malley's carelessness. The judgment is affirmed.